David Krieger, Esq.
KRIEGER LAW GROUP, LLC
HENDERSON OFFICE
2850 W. Horizon Ridge Parkway, Suite 200
Henderson, Nevada 89052
PH: (702) 848-3855, Ext. 101
Email: dkrieger@kriegerlawgroup.com

Miles N. Clark, Esq.
Nevada Bar No. 12796
Shaina R. Plaksin, Esq.
Nevada Bar No. 13935
KNEPPER & CLARK LLC
5510 S. Fort Apache Rd, Suite 30
Las Vegas, NV 89148-7700
Phone: (702) 856-7430
FAX: (702) 447-8048
Email: miles.clark@knepperclark.com
Email: shaina.plaksin@knepperclark.com

Attorneys for Plaintiff

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**

| | |
|---|---|
| JENNIFER BRANCH,<br><br>    Plaintiff,<br><br> v.<br><br>LOANCARE, LLC,<br><br>    Defendant. | Civil Action No.: 1:20-cv-3138<br><br>**COMPLAINT FOR DAMAGES PURSUANT TO THE FAIR CREDIT REPORTING ACT, 15 U.S.C. § 1681, ET SEQ.**<br><br>**JURY TRIAL DEMANDED** |

**JURISDICTION AND VENUE**

1. This Court has federal question jurisdiction because this case arises out of violations of federal law. 15 U.S.C. § 1681 *et seq.*; 28 U.S.C. § 1331.

2. This action arises out of Defendant's violations of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681-1681x ("FCRA").

3. Venue is proper in the United States District Court for the Southern District of Indiana pursuant to 28 U.S.C. § 1391(b) because Plaintiff is a resident of Marion County, the State of Indiana, and because Defendant is subject to personal jurisdiction in the Southern District of Indiana as they conduct business there. Venue is also proper because the conduct giving rise to this action occurred in Indiana. 28 U.S.C. § 1391(b)(2). Further, Loancare has a registered agent of service in Indiana and is listed with the Indiana Secretary of State as a foreign limited liability company doing business in Indiana.

**PARTIES**

4. Plaintiff Jennifer Branch ("Plaintiff") is a natural person residing in Marion County, the State of Indiana. In addition, Plaintiff is a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

5. Defendant Loancare, LLC ("Loancare") is a corporation headquartered in Virginia Beach, VA, doing business in the State of Indiana. Loancare is a furnisher of information as contemplated by 15 U.S.C. § 1681s-2(b) that regularly and in the ordinary course of business furnishes information to a consumer credit reporting agency.

6. Unless otherwise indicated, the use of Defendant's name in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of Defendant.

**INTRODUCTION**

7. The United States Congress has found the banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continued functioning of the banking system. Congress enacted the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* ("FCRA"), to insure fair and

accurate reporting, promote efficiency in the banking system, and protect consumer privacy. The FCRA seeks to ensure consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy because consumer reporting agencies have assumed such a vital role in assembling and evaluating consumer credit and other information on consumers.

8. The FCRA protects consumers through a tightly wound set of procedural protections from the material risk of harms that otherwise flow from inaccurate reporting. Thus, through the FCRA, Congress struck a balance between the credit industry's desire to base credit decisions on accurate information, and consumers' substantive right to protection from damage to reputation, shame, mortification, and the emotional distress that naturally follows from inaccurate reporting of a consumer's fidelity to his or her financial obligations.

9. On May 10, 2019, Plaintiff filed for Chapter 7 Bankruptcy in the United States Bankruptcy Court for the Southern District of Indiana pursuant to 11 U.S.C. § 701 *et seq*. Plaintiff's case was assigned Case Number 19-03372-JMC-7 (the "Chapter 7" or "Bankruptcy"). BK ECF No. 1.

10. On July 18, 2019, Lakeview Loan Servicing, LLC ("Lakeview") filed a Reaffirmation Agreement, whereby Plaintiff agreed to reaffirm the debt owed to Lakeview, subserviced by Loancare,[1] on secured property of a primary residence mortgage on property located at 5213 Alpine Violet Way, Indianapolis, IN 46254. BK ECF No. 15. As part of this reaffirmation agreement, Plaintiff agreed to pay monthly installments beyond the end of

---

[1] The Reaffirmation Agreement is signed by "Loancare, LLC as Attorney in Fact under a limited Power of Attorney." *See* BK ECF No. 15, at 6.

her Chapter 7 Bankruptcy and acknowledged that the debt would not be discharged. *See id.* at 1.

11. On August 20, 2019, Plaintiff obtained an Order of Discharge on her Chapter 7 Bankruptcy case. BK ECF No. 16. Plaintiff's Order of Discharge expressly stated: "[D]ebts covered by a valid reaffirmation agreement are not discharged." *Id.* at 2.

12. Furthering the FCRA's goal of accuracy, a consumer may dispute the accuracy or completeness any item of information appearing in their file. 15 U.S.C. § 1681i(a). Once notified of a dispute, a consumer reporting agency ("CRA") must notify the source or furnisher of information, who must in turn conduct an investigation of the disputed item pursuant to Section[2] 1681s-2(b).

13. Upon receipt of a notice pursuant to 15 U.S.C. § 1681i(a)(2), the furnisher of the information must review all relevant information provided by the CRA. 15 U.S.C. § 1681s-2(b)(1)(B).

14. The furnisher must timely report the results of the investigation to the CRA, which in turn must timely notify the disputing consumer regarding the results of the reinvestigation. *See* 15 U.S.C. §§ 1681s-2(b)(1)(C), 1681i(a)(6).

15. If the furnisher's investigation yields results that the information disputed by the consumer is incomplete or inaccurate, then the furnisher must report those results to all other CRAs. 15 U.S.C. § 1681s-2(b)(1)(D).

16. Additionally, Defendant's conduct described herein also failed to comply with the Consumer Data Industry Association's ("CDIA's") Metro 2 reporting standards ("Metro 2"), which provides guidance for credit reporting and FCRA compliance.

---

[2] Unless otherwise noted, herein, all references to "Section," are to the sections or subsections of United States Code Chapter 15.

17. The CDIA publishes the Metro 2 reporting standards to assist furnishers (like Defendant) with their compliance requirements under the FCRA.

18. A furnisher's failure to follow industry reporting guidelines may establish materially misleading reporting where (1) the furnisher adopts the standard, (2) the furnisher deviated from the standard, and (3) this "deviation might adversely affect credit decisions—in other words, that entit[ies] would have expected [the defendant furnisher] to report in compliance with the [CRRG] guidelines." *Nissou-Rabban v. Capital One Bank (USA)*, No. 15-cv-1675 JLS (DHB), 2016 WL 4508241, at *5 (S.D. Cal. June 6, 2016) (citations and quotations omitted). *See also Wylie v. TransUnion, LLC*, No. 16-cv-102, 2017 WL 835205, at *5-7 (W.D. Pa. Mar. 2, 2017).

19. On information and belief, Defendant herein adopted the Metro 2 reporting standards and at all times relevant implemented the Metro 2 format as an integral aspect of its duties under the FCRA to have in place adequate and reasonable policies and procedures to handle investigations of disputed information.

20. The Metro 2 format guidelines provide specific instruction for properly reporting a secured debt for which a consumer reaffirms in a Chapter 7 bankruptcy. *See, e.g.*, 2017 CDIA Credit Reporting Resource Guide ("2017 Metro 2"), Frequently Asked Question ("FAQ") 27(a), at page 6-17. The instruction provided is: "Account information as it applies going forward." *Id*.

21. Despite the Metro 2 Format's instructions, Defendant named herein failed to conform to the Metro 2 Format when reporting on Plaintiff's account after Plaintiff filed a reaffirmation agreement in the Bankruptcy, as further set forth below.

22. Thus, the incomplete and inaccurate reporting provided to Plaintiff as described herein departed from the credit industry's own reporting standards and was not only inaccurate and incomplete, but also materially misleading under the CDIA's standards as well.

23. This is true both under Metro 2, and if Metro 2 does not apply. Metro 2 requires Defendant report accurate post-discharge payment history for a reaffirmed secured debt, such as a mortgage or automobile. *See supra* ¶ 20 (citing Metro 2 FAQ 27(a)). Even if, however, Metro 2 does not apply, Defendant was required to report historically accurate information post-Confirmation Order, pursuant to 15 U.S.C. § 1681s-2(b).

24. The inaccurate reporting provided to Plaintiff as described herein was not only patently incorrect, but also materially misleading. *See Levine v. JPMorgan Chase & Co.*, 46 F. Supp. 3d 871, 875 (E.D. Wis. 2014).

## **LOANCARE FCRA VIOLATIONS**

### *Loancare Violates 15 U.S.C. § 1681s-2(b)*

25. On or about October 31, 2019, Plaintiff obtained her Trans Union LLC ("Trans Union") credit disclosure pursuant to Section 1681g (the "Trans Union Consumer Disclosure"), which included a tradeline for Loancare partial account no. 6230**** ("Loancare Account").

26. On Plaintiff's Trans Union Consumer Disclosure, Loancare reported inaccurate, derogatory information, including that Plaintiff's account was reporting as included in her Chapter 7 bankruptcy, reported the account as negative, and indicated that the reporting would stay on Plaintiff's credit until 2026. However, as explained *supra* ¶¶ 10–11, Plaintiff reaffirmed her loan in her Chapter 7 bankruptcy, and the debt was not discharged. As such, reporting Plaintiff's Loancare Account as included in bankruptcy and as an adverse account

was both inaccurate and had a tendency to mislead future credit decision-makers insofar as it suggested that Plaintiff's payment obligations had been modified in the bankruptcy.

27. On or about December 6, 2019, Plaintiff disputed the accuracy of the above-referenced inaccurate information on the Trans Union Consumer Disclosure ("Disputed Information") by notifying Trans Union, in writing, of incorrect and inaccurate credit information contained on her Trans Union Credit Report, and requested that this information be corrected (the "Dispute Letter."). The Dispute Letter was mailed to Trans Union.

28. After receipt of the Dispute Letter, Trans Union was required to, *inter alia*, provide the Disputed Information to disputed information to Loancare no later than five days after receipt of the Dispute Letter. 15 U.S.C. § 1681i(a)(2)(A). On information and belief, Trans Union notified Loancare of Plaintiff's dispute.

29. Upon receipt of the dispute from Trans Union, Loancare was required to conduct an investigation of the disputed information pursuant to 15 U.S.C. § 1681s-2(b), and return the results of its investigation to Trans Union.

30. A reasonable investigation would have resulted in correcting Plaintiff's Loancare information to reflect the realities of her reaffirmation.

31. On January 2, 2020, Plaintiff received a Trans Union reinvestigation ("Reinvestigation"). Upon information and belief, Trans Union did not update Plaintiff's Loancare Account because it received an inaccurate verification of the information from Loancare's investigation. Alternatively, upon information and belief, Loancare failed to investigate and respond to Trans Union's notice of dispute. Regardless, while Trans Union identified a number of other accounts which Plaintiff had disputed, it made no mention of Plaintiff's Loancare dispute.

32. On information and belief, Loancare did not investigate Plaintiff's dispute at all. For example, a subsequent April 4, 2020 Trans Union disclosure showed that Plaintiffs' Loancare Account was still reported as having been, *inter alia*, included in bankruptcy. Thus, Loancare violated 15 U.S.C. § 1681s-2(b) by failing to either investigate and, by extension, failing to investigate timely.

33. Alternatively, Loancare violated 15 U.S.C. §1681s-2(b) by failing to notify other reporting agencies it reported data to, as well as nationwide consumer reporting agencies, that it had identified an error on Plaintiff's Trans Union disclosure that should have been universally updated.

34. Neither Plaintiff's October 31, 2019 Trans Union Consumer Disclosure nor her April 4, 2020 Trans Union Consumer Disclosure included any payment history for her Loancare Account, even though Plaintiff had been making timely payments at least since signing her Reaffirmation Agreement in July 2019. As such, Plaintiff's Loancare Account tradeline was missing positive payment history from at least July 2019 through present, consistent with Plaintiff's payments. Loancare thus suppressed the positive credit data that would have provided the Plaintiff a true "fresh start" after filing Bankruptcy. That is, the material omission of Plaintiff's positive payment history on her Loancare Account was patently incorrect because she was in fact making timely monthly payments from at least July 2019 through present ("Positive Suppressed Data").

35. This failure by Loancare caused Plaintiff's Trans Union Credit File to include materially misleading omissions, which in context created misperceptions about Plaintiff's timely (yet unreflected) monthly payments to Loancare.

36. Upon information and belief, the Payment History segment has a significant overall impact on the various consumer reporting products that Trans Union offers credit decision makers.

37. Failing to include the Loancare Account's Payment History reporting was patently incorrect because it did not reflect Plaintiff's actual payment performance from at least July 2019 through present.

38. Loancare's failure was also materially misleading because these omissions created misperceptions about Plaintiff's *actually* timely monthly payments to Loancare from at least July 2019 through present.

39. The duties set out in Section 1681s-2(b) are clear, and industry-wide reporting guidance (2017 Metro 2, as described *supra* ¶ 20) is available for furnishers like Loancare to review if they have questions about the dispute process or their obligations regarding the same. Indeed, the nationwide reporting agencies have, pursuant to 15 U.S.C. § 1681i, established a reporting platform by which consumer disputes are electronically transmitted and investigation results can be returned. Loancare's refusal to conduct a reasonable investigation thus violated clear law and industry guidance, which constituted a reckless disregard of its duties under Section 1681s-2(b). Thus, Loancare's statutory violations were willful. 15 U.S.C. § 1681n.

40. Loancare's statutory violations were at least negligent. 15 U.S.C. § 1681o. Plaintiff suffered actual damages, including out-of-pocket expenses. 15 U.S.C. §§ 1681o, 1681n. Specifically, Plaintiff incurred lost time, wages, and transportation costs in considering her reporting issues. Plaintiff was also forced to acquire an additional copy of her Trans Union

report to determine whether the issues had been corrected. Such costs are concrete and real, as Plaintiff's time has a real and true intrinsic value.

41. Plaintiff also suffered issues regarding credit standing and damage to her creditworthiness due to Loancare's statutory violations.

42. Loancare's statutory violations also caused Plaintiff emotional distress in the form of, *inter alia*, crying, distraction from work, anger, frustration, privacy loss, nightmares, stress, and feelings of worthlessness because Plaintiff had no assurances from Loancare that any properly disputed information was timely corrected. Plaintiff began suffering these damages on an ongoing basis, from the date she received her Trans Union reinvestigation.

43. Plaintiff has been obligated to retain an attorney to prosecute this dispute, and she has incurred attorney's fees and costs as a result, recoverable under 15 U.S.C. §§ 1681o, 1681n.

44. As a result of Loancare's violations of the FCRA, Plaintiff is entitled to recover actual damages, statutory damages, punitive damages, and attorney's fees and costs. 15 U.S.C. §§ 1681o, 1681n.

### FIRST CAUSE OF ACTION
### VIOLATION OF THE FAIR CREDIT REPORTING ACT
### 15 U.S.C. § 1681 *ET SEQ*. (FCRA)

45. Plaintiff incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

46. The foregoing acts and omissions constitute numerous and multiple willful, reckless or negligent violations of the FCRA, including but not limited to each and every one of the above-cited provisions of the FCRA, 15 U.S.C. § 1681 *et seq.*

47. As a result of each and every willful violation of the FCRA, Plaintiff is entitled to actual damages as the Court may allow pursuant to 15 U.S.C. § 1681n(a)(1); statutory damages

pursuant to 15 U.S.C. § 1681n(a)(1); punitive damages as the Court may allow pursuant to 15 U.S.C. § 1681n(a)(2); and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681n(a)(3) from Trans Union.

48. As a result of each and every negligent noncompliance of the FCRA, Plaintiff and is entitled to actual damages as the Court may allow pursuant to 15 U.S.C. § 1681o(a)(1); and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681o(a)(2) from Trans Union.

### PRAYER FOR RELIEF

Plaintiff respectfully requests the Court grant them the following relief against Defendant:

### FIRST CAUSE OF ACTION
### VIOLATION OF THE FAIR CREDIT REPORTING ACT
### 15 U.S.C. § 1681 ET SEQ. (FCRA)

- an award of actual damages pursuant to 15 U.S.C. § 1681n(a)(1);

- award of statutory damages pursuant to 15 U.S.C. § 1681n(a)(1);

- an award of punitive damages as the Court may allow pursuant to 15 U.S.C. § 1681n(a)(2);

- award of costs of litigation and reasonable attorney's fees, pursuant to 15 U.S.C. § 1681n(a)(3), and under 15 U.S.C. § 1681(o)(a)(1) against Defendant for each incident of negligent noncompliance of the FCRA; and

- any other relief the Court may deem just and proper.

///

///

///

///

- 11 -

**TRIAL BY JURY**

Pursuant to the Seventh Amendment to the Constitution of the United States of America, Plaintiff is entitled to, and demands, a trial by jury.

Dated: December 7, 2020

Respectfully submitted,

*/s/ David Krieger, Esq.*
David Krieger, Esq.
KRIEGER LAW GROUP, LLC
HENDERSON OFFICE
2850 W. Horizon Ridge Parkway, Suite 200
Henderson, Nevada 89052

Miles N. Clark, Esq.
Shaina R. Plaksin, Esq.
KNEPPER & CLARK LLC
5510 So. Fort Apache Rd, Suite 30
Las Vegas, NV 89148

Attorneys for Plaintiff